UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA,

v.

NITISH KAUSHAL, a/k/a "Lala",
    Defendant.

Case No. 2:26-mj-00139-kjd

**MOTION FOR DETENTION**

The United States of America moves for pretrial detention of the above-named Defendant pursuant to 18 U.S.C. § 3142(e) and (f).

1.    <u>Eligibility for Detention</u>.

This Defendant is eligible for detention because this case involves a potential life sentence. *See* 18 U.S.C. § 3142(f)(1)(B). The statutory maximum punishment for RICO conspiracy is life if the underlying racketeering conduct carries a life sentence, 18 U.S.C. § 1963(a), and the indictment makes clear that the kilograms of cocaine involved in the drug trafficking aspects of this corrupt enterprise far exceed the five kilograms that would trigger a statutory maximum of life under 21 U.S.C. §§ 841(b)(1)(A), 846. *See, e.g.* Indictment (Docket 1-2) at 29 (describing overt acts involving 100 kilograms of cocaine). Releasing the Defendant also poses a serious risk that the Defendant will flee, making the Defendant eligible for detention under 18 U.S.C. § 3142(f)(2)(A).

2.    <u>Reason For Detention</u>.

The Court should detain the Defendant because there are no conditions of release which will reasonably assure the safety of any other person and the community as well as the Defendant's appearance as required.

1

3.      Rebuttable Presumption.

The United States does not request that this Court employ any rebuttable presumption in this case.

4.      Time For Detention Hearing.

The United States requests the court conduct the detention hearing upon completion of the pretrial services report.

5.      Argument for Detention.

As this Court knows, it must detain a defendant when "no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government bears the ultimate burden to prove by clear and convincing evidence that the defendant's release presents a danger to the community or by a preponderance of the evidence that the defendant is a flight risk. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). This determination is guided by "(1) the nature and circumstances of the offense charged . . . (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).  "The rules of evidence do not apply in a detention hearing" and "the government may proceed by proffer" in such proceedings. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995).

In this case, the nature of the offenses, 18 U.S.C. § 3142(g)(1), and the weight of the evidence, 18 U.S.C. § 3142(g)(2), both favor detention.  On June 25, 2026, a grand jury in the Central District of California returned a 44-page indictment setting forth the criminal enterprise in which this Defendant participated.  *See* Docket 1-2. The indictment includes a broad

2

description of kidnapping, extortion, robberies, and drugs and firearms dealings in which this enterprise engaged.  Dkt. 1-2 at 1-8. It also includes a detailed description of the Defendant assaulting and kidnapping a victim in retribution for supposedly stealing a load of drugs, including a photo of the Defendant and others transporting the victim of this offense to an apartment where the victim was then told to produce $50,000 for the drugs he stole.  Dkt. 1-2 at 13-14.  In short, strong evidence suggests that this Defendant has engaged in serious and violent offenses, and this counsels against setting any conditions for his release.

The Defendant's background and history, under 18 U.S.C. § 3142(g)(3), also favor pretrial detention. The Defendant has no known ties to Vermont. And the indictment makes clear that this corrupt enterprise has substantial ties throughout the country and internationally, including corrupt officials in India. The Defendant's personal history indicates that he entered the United States illegally in Yuma, Arizona in 2022, when he was encountered, received a court date to appear, and was not arrested. Since then, the Defendant has been criminally charged with murder, attempted murder, conspiracy, and weapons violations in 2023, for which he was eventually convicted of a firearms offense and sentenced to 60 days incarceration.  More recently, the Defendant had a misdemeanor involving drugs in 2026.

Moreover, the circumstances of Defendant's arrest on July 16, 2026, shows that he was on the run from law enforcement. The public, unsealed indictment in California from late June 2026 made clear the serious charges the Defendant faces in federal court in Los Angeles. Law enforcement attempted to arrest the Defendant on July 7, 2026, but was unsuccessful. After the indictment was unsealed, the Defendant abandoned his cellular device—for which law enforcement had been obtaining periodic location updates pursuant to a warrant—and became a

fugitive. The FBI added him to its "most wanted" list. *See* www.fbi.gov/wanted/cei/nitish-kaushal (last visited July 17, 2026).

On July 16, 2026, the Defendant was arrested within a mile of the Canadian border, in Alburgh, Vermont. In the overnight hours of July 16, 2026, the Defendant is believed to have abandoned a vehicle just feet from the Canadian border. An individual was spotted in Canada traveling by foot by Canadian law enforcement before the Defendant was again identified in Vermont later that morning. In the early morning hours of July 16, 2026, the Defendant was identified by a concerned citizen when he was seen on a security camera looking into the Vermont citizen's vehicle and going into their barn. When the U.S. Border Patrol encountered the Defendant, he provided a driver's license from New Jersey with a different name before his fingerprints revealed his true identity and he was forced to admit that the name and image on the driver's license were not his. There is no serious question as to the identity of the Defendant, not only because of a fingerprint match, but also because he has a distinctive tattoo that is visible in photographs obtained in the underlying investigation:

(Mirrored Image of Defendant in Investigation)          (Defendant Arrested in Vermont)




The evidence of the Defendant's arrest and the circumstances leading up to his arrest, coupled with his lack of ties to Vermont, thus gives strong reason to believe that the Defendant was on the run, with a plan to evade and deceive law enforcement when he encountered them.

The dangerousness of the charged conduct highlights the danger the Defendant poses if released under 18 U.S.C. § 3142(g)(4).  The indictment also lists anonymous witnesses to the events it recites (Conspirator 1, Witness 1, etc.), whose identities are likely known to the Defendant even though they are concealed from public view. The release of defendants poses general risks to the community based on the underlying conduct reflected in the indictment. But the reference to anonymous civilian witnesses also suggests danger to specific individuals as well.

Finally, the charge the Defendant faces provides a strong incentive for the Defendant to flee if released. It is well established that "a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee." *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018).  *See also United States v. Scali*, 738 F. App'x 32, 33 (2d Cir. 2018); *United States v. Martir*, 782 F.2d 1141, 1147 (2d Cir. 1986) (explaining that the lengthy maximum combined term of imprisonment faced by the defendant "created potent incentives to flee"). Moreover, a Defendant who knows that the evidence of guilt is strong has "a considerable incentive to flee." *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993). The combination of the evidence of his guilt, along with the serious incarceration called for by the laws he violated, gives Defendant every reason to disobey any restriction this Court could impose and pose a danger to this community and other communities and to the law enforcement and court personnel who would be charged with supervising or responding to his conduct.

For the foregoing reasons, the government respectfully submits that detention is the only way to reasonably assure the safety of the community and the appearance of the Defendant as required.  Accordingly, the Court should order the Defendant's pretrial detention.

Dated at Burlington, in the District of Vermont, July 17, 2026.

Respectfully submitted,

By:    /s/ *Dana Hill*
        Dana Hill
        Assistant U.S. Attorney
        P.O. Box 570
        Burlington, VT 05402-0570
        (802) 951-6725